WILLIAM N. ECKERSON, Respondent, v. SCHUYLER G. CRIPPEN, Appellant.

*Right to take water from a spring — no prescriptive rights acquired by a user under a license.*

This action was brought to restrain the defendant from cutting off or in any manner interfering with a pipe which conducted water from a spring upon lands formerly owned by one Crippen. It appeared that in 1837 one Caryl, under whom the plaintiff claimed title, obtained from Crippen a parol license to take and use water from the spring in question, under which he constructed a ditch and laid a pipe which supplied his house with water. In 1839 Crippen conveyed to one La Moure, a lot of ground not far from the spring, and granted to him, and his heirs and assigns, the privilege to bring water from the spring in question sufficient to fill a three-fourths-inch hole for the sum of ten dollars. Thereafter La Moure extended the pipe constructed by Caryl, to his (La Moure's) premises, and inserted in it a plug which allowed the water remaining, after La Moure had been supplied, to flow to Caryl's houses. In 1880 the supply diminished, and being less than was required to fill a pipe of the size specified, the defendant, La Moure's grantee, tapped the pipe in such wise as to prevent any of the water from flowing to the plaintiff's house and used it for his own purposes.

*Held,* that he was entitled to do so.

That as the plaintiff's grantee acquired the right to take the water by the license and consent of the owner, no prescriptive right was acquired by the continuance of its use.

Appeal from a judgment in favor of the plaintiff, entered upon a report of a referee.

*Edick & Smith,* for the appellant.

*Charles T. Brewer,* for the respondent.

Kennedy, J.:

One Daniel Crippen in 1837 was the owner of certain lands situated in Worcester, Otsego county, N. Y., upon which was a spring of water, and one John Caryl was at the same time the owner of a dwelling-house fifty or more rods from said spring, and which, through several mesne conveyances, has now become vested in and is owned by the plaintiff, and is known as the Mill House In 1837, as the referee finds, an oral agreement was entered into between said Daniel Crippen and John Caryl to the effect that in

consideration of ten dollars agreed to be paid by said Caryl to said Crippen, he, Crippen, sold and granted to said Caryl the privilege to take the water from said spring in quantity sufficient for all domestic purposes to said Mill House. That in pursuance of said 'agreement, Caryl bought lead pipe, entered upon Crippen's land and dug a ditch from said spring across the same and his own land to the Mill House, through which the water ran from said spring, in the year 1837. In the several conveyances beginning with that from Caryl down to the plaintiff, and under which he acquired title to the Mill House, no reference is made to any rights to take water from said spring to it.

On the twentieth day of August, 1839, the said Daniel Crippen, being the owner still of said spring and the land upon which it was situate, and those adjacent, thereto, sold and conveyed by warranty deed to one Isaac La Moure a building lot containing about one-third of an acre, and situate about fifty rods north-east of said spring. By the same conveyance he granted to the said La Moure the right to take water from said spring in the following language : " Also the parties of the first do sell unto the party of the second part, his heirs and assigns, the privilege to bring water from a certain spring about fifty rods north-east of said lot sufficient to fill a three-fourth inch hole for ten dollars."

La Moure, upon receiving said conveyance, immediately built a dwelling-house upon said lot, and the same has since that time remained being occupied as a dwelling-house and known as the La Moure House. This house has from the time of its erection been supplied with water taken through a three-fourth inch pipe from said spring. By several mesne conveyances, the defendant became the grantee and owner of said La Moure's house and lot together with the right to take water from said spring, as granted by the said Crippen to said La Moure as early as the eighteenth day of February, 1865, and has since occupied the house as a dwelling place, and been supplied with water from said spring conveyed to his house through said pipe.

. The referee found that the entire water of said spring is not more than sufficient to fill a three-fourth inch pipe. Under the parol agreement between John Caryl and Daniel Crippen, and in 1837, the said John Caryl dug a ditch from said spring across

Crippen's land and his own land to the Mill House. At that time, as the referee finds, La Moure contemplated building on land he owned (but which we do not understand to be the land he acquired of Daniel Crippen two years subsequent to that time), and that he then entered into an agreement with said Caryl, by which it was agreed that La Moure should have a part of the water from said spring, and that he should pay Crippen the ten dollars Caryl had agreed to pay him by the parol agreement between them, and that he should contribute toward the expense of the ditch Caryl was then laying.

After Crippen conveyed to La Moure in 1839, and during that year, the latter built the house known as the La Moure House on the lot bought of Crippen, and in 1840 he continued the pipe Caryl had laid to said dwelling-house, and carried the spring water through the same to the house he so built. The main pipe so laid was tapped by a pipe leading from it to the Mill House, and a plug was kept inserted in the end of the same, by means of which the flow to the Mill House was regulated. This was done by the defendant and his grantors, and the water diverted to the Mill House was only the surplus or remainder after the La Moure House was supplied, the amount so furnished being described as a flow of about the size of a common knitting-needle.

In March, 1880, the plaintiff purchased and became the owner of the Mill House, and commenced to occupy the same. No owner or occupant of that house and the premises prior to the plaintiff ever objected to or disputed the right of the defendant and his grantors to regulate, alter, change or repair the plug or other apparatus in the end of the pipe at the Mill House. The evidence, so far as it goes in that direction, shows that all the owners prior to the plaintiff, instead of holding or claiming adversely to the defendant and his grantors, yielded to the claim of ownership in them.

In July, 1880, there was a deficiency of water in said spring to fill the said three-fourths inch pipe or to supply both houses, and a dispute arose between the parties in relation to the water, and the plaintiff removed the plug at the end of the pipe at the Mill House, which was some eight feet lower than the La Moure House, and thereby diverted the water from the latter. The defendant there-

upon, to continue the supply at his own dwelling, cut the main pipe above and below the point of intersection of the branch leading to the plaintiff's house, and connected the said main pipe by a piece uniting the severed end, the effect of which was to cut off the water from the Mill House, and the same remained in that condition until November 16, 1882, when this action was commenced.

The referee, upon the foregoing facts, found that the plaintiff and those under whom he claimed had held the use of the water adverse to the defendant and his grantors, under a claim of title in it for more than forty years, and had a right, prior to the defendant, by prescription to use so much of the water from said spring and equal in quantity to the amount that ran at the Mill House from 1837 to 1880; and sufficient for all his domestic purposes, with the right to control the same. Further, that the plaintiff had sustained and was entitled to recover damages of the defendant for the diversion of said water as above stated, and that in addition the plaintiff was entitled to a perpetual injunction restraining the defendant from in any manner interfering with the plaintiff's use of said water, in a quantity sufficient for all domestic purposes at his house, and from interfering with the plaintiff's pipe or its connections, etc. Judgment was entered on the report, and from that judgment this appeal is taken.

The defendant, under the grant from Daniel Crippen in 1839, he being then the owner and having a right to convey the same, purchased and became the owner of so much of the water of said spring as would fill a three-fourths inch pipe, which takes all the water produced from said spring. Caryl, the original grantor of the Mill House, and from whom the plaintiff derives his title through several intermediate conveyances to the premises, appropriated part of the waters of the spring in 1837 and diverted them to the Mill House, under and in pursuance of a parol license from Daniel Crippen; and all the right the subsequent grantees had was that which they acquired under said parol license which passed to them, including the plaintiff, not by any apt description, but, if at all, as an appurtenance to the premises conveyed. Whether under the circumstances it so passed is doubtful (*Manning* v. *Smith*, 6 Conn., 289), and the question of adverse possession in Caryl and his grantee is not involved in the case. Caryl having entered by per-

mission of the owner could acquire no right by prescription by continued possession based upon that entry. (*Wood* v. *Leadbitter*, 13 Mees. & Wels., 838; *White* v. *Spencer*, 14 N. Y., 249.)

In 1839 when Daniel Crippen conveyed water sufficient to fill a three-fourths inch pipe from said spring, which took all the water from it to the defendant's grantor, such conveyance vested in the defendant's grantor, and subsequently in him all the water in the spring, and any real or pretended right of the plaintiff's grantor or the plaintiff, was wholly subservient to the superior right of the defendant; and the defendant exercising this right within the limits of the conveyance by Crippen to La Moure was not liable to the plaintiff, because by such exercise he in no manner interfered with any rights of the plaintiff whatever they might be.

In the case of *Wiseman* v. *Lucksinger* (84 N. Y., 32) it is held that where facts exist such as the referee has found in this case no adverse right or right by perscription can be predicated upon them. (See pp. 43, 44.)

The most that can be claimed by the plaintiff is that Caryl, his remote grantor, was granted a parol license by Crippen, the owner, to take and use water from the spring in question. That in pursuance of such license he entered upon the lands of the licensor and put down a pipe and through it took water to the Mill House. That in 1839 Crippen sold and transferred by deed to La Moure the defendant's grantor, the water of the spring, thereby in effect revoking the parol license to Caryl unless the right to any surplus remaining after the La Moure House was supplied continued; after that the grantees of Caryl, with the consent of La Moure and his subsequent grantees used the surplus water not required at the La Moure House to supply the Mill House. Upon these facts no right by prescription or otherwise was acquired by the plaintiff which would in any manner affect the defendant's prior right to water conveyed to La Moure his grantor. (*Cronkhite* v. *Cronkhite*, 94 N. Y., 323.)

Upon the trial the plaintiff was permitted to prove against the defendant's objection and exception that Caryl told the witness in 1837 or 1838 that he had bought the spring of Daniel Crippen, and this in the absence of Crippen, La Moure or any one having an interest in the question. This was error, it was simply the

declaration of Caryl, one of the plaintiff's grantors in his own behalf and interest, and could in no manner affect the rights of the defendant.

The judgment is therefore reversed, and a new trial granted before another referee, costs to abide the event.

HARDIN, P. J. and FOLLETT, J., concurred.

Judgment reversed, and a new trial ordered before another referee, with costs to abide the event.